**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SECURITIES AND EXCHANGE
COMMISSION,
*Plaintiff,*

and

KAREN LYNN BENSON; P.J. BRIX,
LLC,
*Claimants-Appellants,*

v.

CAPITAL CONSULTANTS LLC;
JEFFREY L. GRAYSON; BARCLAY L.
GRAYSON,
*Defendants,*

_____

THOMAS F. LENNON,
*Receiver-Appellee.*

No. 04-35339

D.C. No.
CV-00-01290-KI

7647

SECURITIES AND EXCHANGE
COMMISSION; CAROLYN L. ARNTSON;
ARNTSON FAMILY HOLDINGS, LLC;
MARY ARNTSON; JERRY L. BAKER;
MARY BETH BAKER; KAREN LYNN
BENSON; RODERICK A. LIVESAY;
BRIX DEARMOND LLC; JOHN R.
CHANEY; J. DAVID COUGHLIN AND
JENNIFER LEE COUGHLIN TRUST; J.
DAVID COUGHLIN; MARLENE
DUTCHER; ROBERT DUTCHER; DAVOL
FAMILY TRUSTS A AND B; ANN
HAZEN FRANCIS; FREMONT LAND
COMPANY LLC; FUNERAL
ASSOCIATES LLC; JAY A. HINZ;
HOLTZ JOINT TRUST; KENNETH E.
HOLTZ; ROSELLA G. HOLTZ; PAULA
J. KING; SHELLEY KING; LABORERS
INTERNATIONAL UNION OF NORTH
AMERICA, LOCAL 296; ELIZABETH
MCNALLY; JAMES MURPHY;
PATRICIA J. MURPHY; WAYNE
MUSGROVE; ESTATE OF BENNIE KAY
MUSGROVE; BETTY NORRIE;
INTERTRIBAL TIMBER COUNCIL; P.J.
BRIX, LLC; KENNETH R. POORMAN;
POORMAN FAMILY LLC; QUALITY
ELECTRIC MONEY PURCHASE PLAN;
SCOTT THOMASON; DONALD E.
TYKESON TRUST; DONALD E.
TYKESON; DONALD E. TYKESON
FOUNDATION; BOYD VAN NESS;

No. 04-35967

D.C. Nos.
CV-00-01290-KI
CV-01-00609-KI

OPINION

Wand's Funeral Home Defined
Benefit Pension Plan; Robert J.
Wilhelm Trust; Allen and
Esther Wilson Revocable Trust;
Leslie R. Wolf; Martin Wolf;
Deborah Wolf; Nancy M.
Gabriel; Joseph Gabriel; Robert
B. Gutterman Trust; S.M.
Gutterman, MA, JD, Profit-
Sharing Plan; G.S. Gutterman,
MD; S.M. Gutterman; G.S.
Gutterman; IBEW Local Union
1245; Noel B. Flynn; Jeld-Wen
Foundation; Quality Electric,
Inc.; AFTCS-Preferred
Endowment Care-California;
American Funeral & Cemetery
Trust Services Preferred
Endowment Care — Oregon/
Washington,

*Plaintiffs,*

Eighth District Electrical
Pension Fund; Eighth District
Electrical Benefit Fund,

*Claimants,*

and

American Funeral and Cemetery
Trust Services; Virginia K.
Mudd; Virginia B. Mudd
Revocable Trust,

*Plaintiffs-Appellants,*

v.

Capital Consultants LLC;
Jeffrey L. Grayson; Barclay L.
Grayson; Capital Consultants
LLC; Andrew Wiederhorn;
Lawrence A. Mendelsohn;
Jeffrey L. Grayson; Barclay L.
Grayson; Capital Consultants,
Inc.; Wilshire Credit
Corporation; Wilshire Financial
Services Group, Inc.; Wilshire
Servicing Corporation; Portland
Servicing Corporation; Capital
Wilshire Holdings, Inc.; Sterling
Capital LLC; Daniel Dyer; Ted
Wiederhorn; Specialty Finance
Investors LLC; Tiffany
Wiederhorn; Joyce Mendelsohn;
Wilshire Real Estate Investment
Trust, Inc.; First Bank of
Beverly Hills FSB; Wilshire
Acquisition Corporation;
Wilshire Funding Corporation;
CF Credit LLC; Bud Coleman;
David Frey; Foley McIntosh
Frey & Claytor PC; Oxbow
Capital Partners, LLC; Oxbow
Capital 1999 Fund I, LLC;
Oxbow Capital 1999 Fund B,
LLC; Bear Stearns & Co.;

Moss Adams LLP; Consillium, Inc.; Suzanne Perkins; Larry Tapanen; Stephen Olson; Shawn Olson; O'Melveny & Myers LLP; Robert N. Eccles; Mark Peterman; Ellis & Howard PC; Weiss Jensen; McCarter & English; Brooks Financial LLC,
*Defendants,*

Thomas F. Lennon,
*Receiver-Appellee.*

Appeal from the United States District Court
for the District of Oregon
Garr M. King, District Judge, Presiding

Argued and Submitted
March 9, 2006—Portland, Oregon

Filed July 12, 2006

Before: Melvin Brunetti, Thomas G. Nelson, and
Richard A. Paez, Circuit Judges.

Per Curiam Opinion

## COUNSEL

John W. Stephens, Esler, Stephens & Buckley, Portland, Oregon, for the appellants.

Loraine L. Pedowitz, Allen Matkins Leck Gamble & Mallory LLP, San Diego, California, for the appellee.

## OPINION

PER CURIAM:

### I.    Introduction

Pursuant to 28 U.S.C. § 1291, we have jurisdiction over appeals from "all final decisions of the district courts of the United States."[1] This appeal presents the question of whether a district court's order determining the rights and liabilities of some, but not all, claimants with claims to receivership assets is a final decision under § 1291.[2] We conclude that, unless the district court certifies the order and directs entry of judgment pursuant to Federal Rule of Civil Procedure 54(b), such an order is not a final decision. Thus, we lack jurisdiction over the appeal of one set of claimants/appellants, Benson and Brix, LLC ("Benson and Brix"), but we have jurisdiction over the appeal of the other set, the American Funeral and Cemetery Trust Services, MUDD, and the Mudd Revocable Trust. We address the merits of the second set of claimants' appeal in a memorandum disposition issued with this opinion.

### II.    Background

These consolidated appeals arise from a civil suit against an investment advisor, Capital Consultants, LLC ("CCL"), by the SEC ("the SEC litigation"). The appellants were all clients of CCL and are thus claimants in the SEC litigation. To understand their appeal, one must not only understand the appellants' position in the SEC litigation, but also in another suit.

---

[1]28 U.S.C. § 1291.

[2]We recognize that 28 U.S.C. § 1292(a)(2) provides for appeal in receiverships in certain circumstances. However, those circumstances are not present here, and we have interpreted the provision narrowly. *See id.*; *FTC v. Overseas Unltd. Agency*, 873 F.2d 1233, 1235 (9th Cir. 1989). Thus, we address our jurisdiction solely under § 1291.

The appellants are part of a group known as the American Funeral Plaintiffs. Along with other clients of CCL, the American Funeral Plaintiffs sued CCL and third parties directly ("the direct action") when CCL's fraud became known. When settlement talks with the third party defendants in the direct action stalled due to differences of opinion between the American Funeral Plaintiffs and the other plaintiffs, a settlement agreement among the plaintiffs was reached. The American Funeral Plaintiffs agreed to exchange their rights to certain claims against the third party defendants in the direct action — and therefore their ability to block settlement — in exchange for $9.975 million, plus interest. Because CCL was, at the time of the settlement in the direct action, under receivership in the SEC litigation, the district court in the SEC litigation had to approve the settlement agreement among the plaintiffs in the direct action. It did so. Thus, the American Funeral Plaintiffs ended their involvement in the direct action.

Meanwhile, the SEC litigation continued. Eventually, the court adopted a second amended distribution plan. It interpreted that plan to allow claimants, including the appellants, to receive a set distribution or to trace their investments if they wished. However, in an order dated August 18, 2003, the court held that American Funeral Plaintiffs had to remit any funds they had received pursuant to the settlement agreement among the plaintiffs in the direct action, if they elected to trace their investments. Both sets of appellants elected to trace, and now challenge this remittance requirement, arguing that it is neither true to the terms of the distribution plan nor to the terms of the settlement agreement.

The receiver did not object to the tracing claims of the American Funeral and Cemetery Trust Services, MUDD, and the MUDD revocable trust. Thus, the August 18, 2003 order provided the method by which the receiver ultimately determined the sums this first set of claimants would receive. The claimants sought Rule 54(b) certification of, and entry of

judgment on, the district court's August 18, 2003 order as it applied to them. The district court granted their request. Accordingly, they appeal from a judgment the district court certified as final.

The receiver *did* object to the tracing claims of Benson and Brix. However, in an order dated February 9, 2004, the district court approved their claims. Thus, the August 18, 2003 order provided the method by which the receiver ultimately determined the sums Benson and Brix would receive, but the court's February 9, 2004 order allowed the award of those sums over the receiver's objection. Without seeking Rule 54(b) certification, Benson and Brix appealed the district court's February 9, 2004 order.

In the appellants' initial briefing, they argued that this court has jurisdiction over Benson and Brix's appeal because the district court's February 9th order was a final order or judgment pursuant to § 1291. They argued for a liberal interpretation of finality, drawing analogies to bankruptcy. At oral argument, they supplemented their briefing with two citations to out-of-circuit cases that held similar orders appealable under the collateral order doctrine. They argued for jurisdiction over the American Funeral and Cemetery Trust Services, MUDD, and the Mudd Revocable Trust's appeal pursuant to Rule 54(b) and § 1291.

## III. Discussion

**[1]** Generally, a final decision under § 1291 "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."[3] However, in certain circumstances, a decision that does not end the litigation may be considered final under the statute. The collateral order doctrine defines one such circumstance; Rule 54(b), another.

---

[3]*Catlin v. United States*, 324 U.S. 229, 233 (1945).

**[2]** No one contends that either the August 18th order or the February 9th order ends the litigation. Accordingly, neither order is a final decision in the usual sense. To determine if we nonetheless have jurisdiction under § 1291, then, we must determine whether the collateral order doctrine or Rule 54(b) applies to those orders.[4]

## A. The Collateral Order Doctrine

**[3]** The collateral order doctrine was designed to allow appeal from a "narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system[,] nonetheless be treated as final."[5] Requirements of the doctrine are often described as three-fold. Orders that do not dispose of the entire litigation are appealable as collateral orders if they "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] [are] effectively unreviewable on appeal from a final judgment."[6] The Supreme Court has emphasized that these requirements are to be

---

[4]Drawing analogies to the bankruptcy context, the claimants urge us to take a "similarly flexible" approach to finality in this, the receivership, context. We decline to do so. Although similarities between receivership and bankruptcy proceedings certainly exist, differences exist as well. One such difference is in the statutes that govern appeals. Title 28 U.S.C. § 158 governs bankruptcy appeals to the district court and provides the more "flexible" approach to which appellants refer. Title 28 U.S.C. § 1291 governs here.

[5]*Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (internal quotation marks and citation omitted).

[6]*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). These requirements may also be framed as two requirements, one of which has three prongs. That is: the order must finally resolve a disputed issue involving a claim of right, and the right in question must be important, evanescent, and collateral to the rest of the litigation. *See, e.g., Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

applied strictly and that only a "narrow class of decisions" satisfy them.[7]

Strict application of the requirements is particularly important because, when a court identifies an order as an appealable, collateral one, it determines the appealability of all such orders.[8] If courts did not apply the requirements strictly, then, the doctrine would no longer govern a "narrow class of decisions,"[9] but a broad class. Thus, we are not to consider "the chance that the litigation at hand might be speeded, or a particular injustic[e] averted, by a prompt appellate court decision"[10] when we determine whether a particular order is an appealable, collateral one. We must take a broader view and determine if resolution of the kind of claim in question must *always* be immediately appealable under the collateral order doctrine.

[4] We conclude that orders such as the district court's February 9th and August 18th orders involve the merits of the litigation. Thus, they are not collateral to the merits[11] and are not appealable under the collateral order doctrine.[12] To be truly collateral to the merits of the litigation, a claim or right must not be "an ingredient of the cause of action" and must therefore "not require consideration with" that cause of action.[13] The disposition of the issue should not "affect, or [ ] be

---

[7]*See Digital Equip.*, 511 U.S. at 867-68.

[8]*See Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 439 (1985) ("This Court . . . has expressly rejected efforts to reduce the finality requirement of § 1291 to a case-by-case determination of whether a particular ruling should be subject to appeal."); *Digital Equip.*, 511 U.S. at 868.

[9]*Digital Equip.,* 511 U.S. at 867.

[10]*Id.* at 868 (internal quotation marks and citation omitted).

[11]*Id.*

[12]Because such orders fail the collateral requirement, we need not consider the other requirements of the collateral order doctrine.

[13]*Cohen*, 337 U.S. at 546-47.

affected by, decision of the merits."[14] To determine if the claims in question are collateral to the merits of the litigation, we must determine what the merits are and what the claims are. Then, we must determine if resolution of the claims affects the merits.

[5] Defining the "merits" of the litigation is not particularly difficult. The litigation in question is a receivership proceeding instituted by the SEC, an agency charged with protecting "the national public interest and the interest of investors."[15] In accord with its charge, the SEC sought to place CCL into receivership after determining that it and its principals, the defendants, had violated securities laws and harmed their clients. A review of the stipulated court order reveals that the receivership had several purposes and the receiver, several different duties. In addition to investigating and pursuing claims arising from legal violations, the receiver was to locate, take control of, and preserve the company's assets. The receiver was then charged with disbursing those assets in accordance with the court's orders. Because rightful claims to assets exceed the assets available, the court, with the help of the receiver, must determine how to distribute the assets equitably. Thus, distributing CCL's assets equitably is one of the central purposes of the receivership and, correspondingly, of the SEC's litigation.[16]

The claim the appellants asserted in this case was a claim to assets held by the receiver. Specifically, the appellants

---

[14]*Id.* at 546.

[15]15 U.S.C. § 80a-1(b).

[16]*See, e.g., Esbitt v. Dutch-Amer. Mercantile Corp.*, 335 F.2d 141, 143 (2d Cir. 1964) (concluding that, "in bringing an action for an injunction and the appointment of a receiver, the SEC is [ ] concerned with the protection of those who already have been injured by a violator's actions from further despoliation of their property or rights" not merely with "the enjoining of possible future violations") (internal quotation marks omitted).

asserted a right to receive traced funds without remitting set-
tlement funds.

**[6]** If one of the primary purposes of the litigation is to
determine how best to distribute CCL's assets to claimants,
including the appellants, their claims clearly comprise part of
the merits of the litigation. The fact that they comprise only
a small piece of the merits is irrelevant. Resolution of the
appellants' claims will directly affect the ongoing litigation.[17]
If the claims succeed, the pool of assets the receiver controls
will be smaller. Accordingly, the receiver will have fewer
resources to distribute to other claimants.

We acknowledge that several other circuits have drawn the
opposite conclusion.[18] We respectfully disagree with their
decisions for the reasons given above and for one other rea-
son: Following the other circuits' rule would, we believe, lead
to costly and unnecessary uncertainty.

In the receivership context, determining whether an order
finally resolves a claim — and thus whether the order might
satisfy the collateral order doctrine — can be extremely diffi-
cult. The facts of the Sixth Circuit case illustrate this diffi-
culty. In *Basic Energy*, each party identified a different order
as the one finally resolving the appellants' claims; the court,
yet a third. One order in that case ended up providing the
method that resolved the appellants' claims. The receiver
therefore argued that it was the order from which the claim-
ants should have appealed.[19] The claimants argued that a sub-
sequent order was the appropriate order from which to appeal.[20]

---

[17]*See Cohen*, 337 U.S. at 546.

[18]*See SEC v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 665-67
(6th Cir. 2001) (holding that a court order resolving some claims to receiv-
ership assets was an appealable, collateral order); *SEC v. Forex Asset
Mgmt. LLC,* 242 F.3d 325, 330-31 (5th Cir. 2001) (same).

[19]*Basic Energy*, 273 F.3d at 663.

[20]*Id.* at 664-65.

After carefully evaluating the two orders cited by the parties, the court concluded that neither order finally resolved the claim in question.[21] After examining the record, however, the court concluded that a third order issued by the district court after the appeal was taken — and never cited by the parties — did so.[22] Moreover, the court concluded that this third order satisfied the other requirements of the collateral order doctrine as well. Thus, the court held that it had jurisdiction.[23] Accordingly, in the Sixth Circuit case, it was not clear which order was appealable until the court resolved the appeal.[24]

The particular difficulty in the receivership context of determining whether an order satisfies the collateral order doctrine creates real problems for parties and, ultimately, for courts. As with all final decisions, the time for appeal of an appealable collateral order begins to run on the date the court enters the order.[25] Thus, parties who do not realize that an order may be an appealable collateral order before the time for appeal runs out will lose their opportunity to appeal. Also problematic, parties aware of this potential pitfall will file appeals of all orders that might satisfy the collateral order doctrine in order to protect their appellate rights. Uncertainty regarding finality and appealability will therefore generate extra work for parties as well as for courts.

The practical problems that would result from categorizing orders in this context as appealable collateral orders strength-

---

[21]*Id.*

[22]*Id.* at 665.

[23]*Id.*

[24]In this case, the problem was perhaps less extreme, partly because there were fewer orders from which to choose. However, it was an open question whether the August 18th order would resolve the appellants' claims, at least until the end of the period during which the receiver could object to a party's claims

[25]*See* Fed. R. App. P. 4; Note, *Appealability in the Federal Courts*, 75 Harv. L. Rev. 351, 367 (1961).

ens our conviction that our decision *not* to do so is correct. We turn now to the other possible avenue of jurisdiction over such orders: Federal Rule of Civil Procedure 54(b).

## B. Federal Rule of Civil Procedure 54(b)

**[7]** Rule 54(b) allows a district court to finalize an order that completely disposes of one or more, but "fewer than all of the claims or parties."[26] A brief review of the rule's history illustrates its purpose.

Rule 54(b) was originally promulgated in response to newly-liberalized rules regarding joinder of claims and parties.[27] Courts and commentators worried that liberal joinder "increased the danger of hardship and denial of justice through delay if each issue must await the determination of all issues as to all parties before a final judgment can be had."[28] Thus, the original version of Rule 54(b) allowed for appeal to be taken from an order that finally determined a single claim, despite the fact that other claims remained.[29] Because the original rule did not require that a court enter judgment on the claim before the time for appeal began to run, it left parties uncertain as to whether particular orders were appealable.[30] Unwary parties missed the opportunity to appeal, and the courts were flooded with protective appeals.[31] In other words,

---

[26]Fed. R. Civ. P. 54(b).

[27]*See* 10 James Wm. Moore et al., *Moore's Federal Practice,* § 54 app. 102[1].

[28]*Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511 (1950).

[29]*Moore's Federal Practice*, Civ. § 54 App. 102[1]. The rule was amended in 1961 to allow for an appeal from an order that disposed of all the rights and liabilities of a single *party* as well. *Id.* at [6].

[30]*Id.* at [2].

[31]*Id.* ("If there was any real doubt as to the finality of an adjudication, and there often was, careful practice dictated an appeal by a losing party dissatisfied with the adjudication, so that fruitless appeals were often taken.")

courts and parties faced the same kinds of problems outlined in the previous section of this opinion.

[8] To remedy these problems, Rule 54(b) was amended in 1946 to include the requirements, still present in the rule today, that the district court "make an express determination that there is no just reason for delay" and that the court make "an express direction for the entry of judgment."[32] All other orders remain interlocutory under the rule.[33] Thus, the time for appeal does not begin to run until a court has made its express determination and direction — until it finalizes its decision. The rule thereby avoids the confusion and waste of time created by uncertainty as to finality, helps insure that a decision really is final before it is appealed, and alerts the district court to the fact of the appeal. Awareness of the specific issue on appeal is particularly important because Rule 54(b) allows for the appeal of claims that go to the merits of the litigation.[34] Thus, resolution of a Rule 54(b) appeal may affect the ongoing litigation. This is in contrast to the collateral order doctrine, which allows for appeal only of issues collateral to the litigation.[35]

[9] As discussed above, the orders from which both sets of appellants seek to appeal address the merits of the litigation and finally resolve all the claims of only some of the parties. Accordingly, they fall squarely within Rule 54(b). In order to appeal the decisions in those orders, then, the parties must ask

---

[32]Fed. R. Civ. P. 54(b); *Moore's Federal Practice* § 54 app. 102[3].

[33]*Id.*

[34]*See Moore's Federal Practice,* § 54.27(2)(c); 75 Harv. L. Rev. at 367.

[35]Some commentators have noted that the doctrine and the rule may overlap in rare circumstances. *See, e.g.,* 15A Charles Alan Wright et al., *Federal Practice and Procedure* § 3911 (2d ed. 2005) (noting that the collateral order doctrine "has been relied upon to find finality as to orders that finally dispose of all disputes as to parties whose role in the litigation is itself subordinate and collateral to the merits"). However, any overlap does not bear on our decision.

the district court expressly to determine that no just reason for delay exists and to order the entry of judgment.

[10] The American Funeral and Cemetery Trust Services, MUDD, and the Mudd Revocable Trust followed the required procedures and the district court made the required determination and direction. Accordingly, those appellants have appealed from a decision rendered final pursuant to Rule 54(b) and over which we have jurisdiction.

[11] Benson and Brix, however, did not follow the required procedures. Accordingly, the order from which they appeal remains interlocutory and we lack jurisdiction over it. Thus, we dismiss their appeal for lack of jurisdiction.

## IV.   Conclusion

The appellants seek to appeal district court orders that adjudicated all of their rights and liabilities. Because numerous claims and parties remain before the district court, the orders do not terminate the litigation. Thus, they are not final decisions in the usual sense. Because the appellants' claims are integral to the merits of the litigation, the orders are not collateral. Accordingly, they are not orders over which we have jurisdiction under the collateral order doctrine. Rather, they are precisely the kind of orders addressed by Federal Rule of Civil Procedure 54(b). Benson and Brix did not obtain the certification and direction for entry of judgment required by Rule 54(b) to render an order final, and we lack jurisdiction over their appeal. The American Funeral and Cemetery Trust Services, MUDD, and the Mudd Revocable Trust did obtain the required certification and direction, and we have jurisdiction over their appeal. We address the merits of their appeal in a memorandum disposition that accompanies this opinion.

The appeal in No. 04-35339 is DISMISSED FOR LACK OF JURISDICTION. The merits of appeal No. 04-35967 are addressed in the accompanying memorandum disposition.