**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LUCINE TRIM, individually and on behalf of all others similarly situated, | No. 22-55517 |
| *Plaintiff-Appellant*, | D.C. No. 2:20-cv-01027-SVW-KS |
| v. | |
| REWARD ZONE USA LLC; DOES, 1-10 inclusive, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Submitted June 28, 2023[*]
Pasadena, California

Filed August 8, 2023

Before: N. Randy Smith, Kenneth K. Lee, and Lawrence
VanDyke, Circuit Judges.

Opinion by Judge Smith

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

# SUMMARY[**]

## Telephone Consumer Protection Act

The panel affirmed the district court's dismissal of Lucine Trim's cause of action alleging a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, when Reward Zone USA, LLC, sent her at least three mass marketing text messages that utilized "prerecorded voice[s]."

The panel held that the text messages did not use prerecorded voices under the Act because they did not include audible components. The panel relied on the statutory context of the Act and the ordinary meaning of voice, which showed that Congress used the word voice to include only an audible sound, and not a more symbolic definition such as an instrument or medium of expression.

The panel addressed Trim's appeal of the district court's dismissal of another cause of action under the Telephone Consumer Protection Act in a simultaneously-filed memorandum disposition.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Todd M. Friedman, Adrian R. Bacon, and Thomas E. Wheeler, Law Offices of Todd M. Friedman, Woodland Hills, California, for Plaintiff-Appellant.

Neil Asnen, Klein Moynihan Turco LLP, New York, New York; Jay T. Ramsey, Sheppard Mullin Richter & Hampton LLP, Los Angeles, California; for Defendant-Appellee.

## OPINION

N.R. SMITH, Circuit Judge:

Plaintiff Lucine Trim (Trim) appeals from the district court's partial judgment granting a motion to dismiss in favor of Defendant, Reward Zone USA, LLC (Reward Zone), in a putative class action lawsuit brought under the Telephone Consumer Protection Act (TCPA). In Trim's second cause of action, which is the subject of this opinion, Trim alleged a violation of the TCPA, 47 U.S.C. § 227, because she received at least three mass marketing text messages from Reward Zone which utilized "prerecorded voice[s]," *id.* § 227(b)(1)(A). We hold that these text messages did not use prerecorded voices under the TCPA, because they did not include audible components. This conclusion follows from the statutory context of the TCPA, and the ordinary meaning of voice, which show that Congress used the word voice to include only an audible sound, and not a more symbolic definition such as an instrument or medium of expression. Therefore, we affirm the district court's grant of Reward Zone's motion to dismiss the second cause of action.

I

On or about April 14, 2020, Trim received a text message from an unknown number stating: "Hiya Lucine, you are a valuable customer. In these tough times, let us [] reimburse [you] for your shopping needs." The text then provided a link directing Trim to a promotional website by Reward Zone. On this website, Reward Zone entices consumers to complete "Deals" in order to claim prizes. Although Trim was never a customer of Reward Zone and never provided her cell number to Reward Zone or its lead vendor, she received at least two more similar text messages from Reward Zone soliciting her to complete "Deals" within a 12-month period.

A

Trim represents and is a member of a class of: "all persons within the United States who received any unsolicited text message[] sent using an [automatic telephone dialing system (ATDS)] or an artificial or prerecorded voice from [Reward Zone], which text message was not made for emergency purposes or with the recipient's prior express consent within the four years prior to the filing of the Complaint through the date of class certification." In Trim's first cause of action, she alleged that the text messages were sent using an ATDS and thus violated the TCPA.[1] In her second cause of action, she alleged that the text messages constituted "prerecorded voice messages" and, therefore, also violated the TCPA on that ground. To support this claim, Trim argued that, because one definition

---

[1] We address the appeal of the district court's dismissal of the first cause of action in a memorandum disposition to be filed simultaneously with this opinion.

of "voice" in Meriam Webster's dictionary is "an instrument or medium of expression," the automatic messages sent to Trim (which were drafted before being sent), constituted "prerecorded voice[s]" as prohibited by 47 U.S.C. § 227(b)(1)(A).[2]

## B

The initial complaint was filed by Tracy Eggleston and Monica Abboud in January 2020. Before Reward Zone filed an answer, the complaint was amended twice. First, on April 20, 2020, Trim was added as an additional class representative to the lawsuit in the Amended Complaint. Next, the Second Amended Complaint was filed in June 2020. In that complaint, Eggleston and Abboud decided not to pursue their claims, leaving only Trim as a class representative. In September 2020, the parties filed a joint stipulation to stay the case pending the Supreme Court's resolution of *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021), which the district court granted. In April 2021, about a week after the Supreme Court decided *Duguid*, the district court ordered Trim to show cause as to why the Second Amended Complaint should not be dismissed in light of the ruling.[3] Trim believed that an amendment would cure the potential pleading deficiencies and requested leave to file a

---

[2] Trim also brought two more causes of action (three and four), where she alleged that text messages were sent to those on the Do Not Call registry and that, therefore, Reward Zone failed to implement reasonable practices and procedures to effectively prevent "telephone solicitations" in violation of 47 U.S.C. § 227(c). These causes of action are not the subject of Trim's appeal.

[3] The Supreme Court's decision was only relevant to pleading deficiencies in the two causes of action not before us, and we do not discuss the decision.

Third Amended Complaint in November 2021, which the district court granted. Trim then promptly filed the Third Amended Complaint, and, in December 2021, Reward Zone filed its motion to dismiss all of Trim's claims given their failures to state claims.

C

The district court made a ruling on January 28, 2022. As to the first cause of action (which alleged a violation of 47 U.S.C. § 227(b)(1)(A) because Reward Zone's text messages used an ATDS), the district court held that Trim failed to plead the use of an ATDS. As to the second cause of action (which alleged a violation of § 227(b)(1)(A) on the alternative ground that the text messages were "prerecorded voice messages"), the district court held that the text messages did not use voices and therefore did not violate the applicable section of the statute. Because Reward Zone's text messages did not involve an ATDS or an artificial or prerecorded voice, the district court dismissed the claims under § 227(b) (causes of action one and two) with prejudice. In contrast, the district court dismissed causes of action three and four (which are not before us) with leave to amend.

D

In February 2022, Trim filed a Fourth Amended Complaint. Later that same month, Reward Zone filed an answer. Trim then filed an unopposed motion to certify for appeal her § 227(b) claims (her first two causes of action) pursuant to Rule of Federal Civil Procedure 54(b), which allows a district court to certify an issue for immediate appeal as a partial judgment when multiple claims or parties are involved in a suit, a final decision as to one or more claims has been rendered, and the court finds there is no just

reason for delay.  The district court found that these factors weighed in favor of allowing an immediate appeal of the first two causes of action, granted Trim's motion, and entered partial judgment for Reward Zone on these causes of action. Trim timely filed a notice of appeal to this court.

## II

Because the district court issued a partial judgment under Federal Rule of Civil Procedure 54, we have jurisdiction under 28 U.S.C. § 1291.  *See SEC v. Cap. Consultants LLC*, 453 F.3d 1166, 1174 (9th Cir. 2006) (per curiam).  We review de novo the district court's decision to grant Reward Zone's motion to dismiss.  *See Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007). We also review de novo the district court's interpretation of the TCPA.  *See Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1055 (9th Cir. 2008).

## A

In 1991, when telemarketing became common, Congress enacted the TCPA to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls."  S. Rep. No. 102–178, at 1 (1991).  The TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice  . . . to any telephone number assigned to a  .  .  .  cellular  telephone  service."     47  U.S.C. §  227(b)(1)(A)(iii).  Thus, there are two ways to violate this provision: using an ATDS or an "artificial or prerecorded voice."  The TCPA defines an ATDS, but does not define "artificial or prerecorded voice."  *See id.* § 227(a).  We need not define "artificial" or "prerecorded," because both are

merely adjectives that modify the disputed term—"voice." *See United States v. Mejias*, 452 F.2d 1190, 1193 (9th Cir. 1971) (declining to define the scope of a term when it was not necessary to the disposition).

Our first job is to determine whether congressional intent regarding the definition of "voice" is clear because when the meaning of a statute is clear, the "sole function of the courts" is to "enforce [the statute] according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). To determine whether the statute is clear, we utilize "traditional tools of statutory construction." *NLRB v. United Food & Com. Workers Union, Loc. 23, AFL-CIO*, 484 U.S. 112, 123 (1987). One such tool is that we interpret words consistent with their "ordinary meaning . . . at the time Congress enacted the statute," *Perrin v. United States*, 444 U.S. 37, 42 (1979), because absent contextual evidence that Congress intended to depart from the ordinary meaning of an undefined term, *see Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 574 (2012), the ordinary meaning of language "expresses the legislative purpose," *FMC Corp. v. Holliday*, 498 U.S. 52, 57 (1990). Therefore, "persuasive proof" of congressional intent is required before we embrace an "idiosyncratic definition." *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2073 (2018).

Another "fundamental canon of statutory construction [is] that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference

to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). When analyzing the context, we apply the "the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985) (quoting *Colautti v. Franklin*, 439 U.S. 379, 392 (1979)).

Most important, "[o]ur inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Robinson*, 519 U.S. at 340 (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989)); *see also Wilderness Soc'y v. United States Fish & Wildlife Serv.*, 353 F.3d 1051, 1061 (9th Cir. 2003) (holding that if using traditional means of determining Congress's intent reveals that Congress spoke clearly, our inquiry is at an end).

## B

We hold that Congress clearly intended "voice" in 47 U.S.C. § 227(b)(1)(A) to encompass only audible sounds, because the ordinary meaning of voice and the statutory context of the TCPA establish that voice refers to an audible sound. We address the ordinary meaning and statutory context in turn.

The ordinary meaning of "voice" when the TCPA was enacted, *see Perrin*, 444 U.S. at 42, was a "[s]ound formed in or emitted from the human larynx in speaking," *Voice* (def. 1a), *Oxford English Dictionary* (2d ed. 1989)); *see also Voice* (def. 1a), *Webster's Ninth New Collegiate Dictionary* (1991) ("sound produced by vertebrates by means of lungs, larynx, or syrinx"). Other definitions also show that the ordinary meaning of voice relates only to audible sound. For

example, the primary definition of "vocalize" is "to give voice to: UTTER; specif[ically]: SING." *Vocalize* (def. 1), *Webster's Ninth New Collegiate Dictionary.* To take another example, "[v]iva voce" is Latin for "[w]ith the living voice; by word of mouth." *Viva voce*, *Black's Law Dictionary* (6th ed. 1990). The phrase "is equivalent to 'orally'" and "[a]s descriptive of a species of voting, it signifies voting by speech or outcry." *Id.*; *see also Voice vote*, *Webster's Ninth New Collegiate Dictionary* ("a parliamentary vote taken by calling for ayes and noes and estimating which response is stronger"). To be sure, Trim accurately notes that "voice" can also be used symbolically. For example, "voice" can be defined as an "[u]tterance or expression," *Voice* (def. 1f), *Oxford English Dictionary*, or as an "instrument or medium of expression," *Voice* (def. 3), *Webster's Ninth New Collegiate Dictionary*. However, "[t]hat a definition is broad enough to encompass one sense of a word does not establish that the word is *ordinarily* understood in that sense." *Taniguchi*, 566 U.S. at 568 (emphasis in original). Such is the case here. The more symbolic definitions are listed well after the primary ones in the dictionaries. Moreover, the examples in the dictionary illustrating a symbolic sense of "voice" that do not involve an audible component only invoke inapplicable poetic or literary settings: "the courage which gave Voice to its creed"; "hero-worship, which found voice in song"; and "the party [that] became the voice of the workers." *Voice* (def. 1f), *Oxford English Dictionary*; *Voice* (def. 3), *Webster's Ninth New Collegiate Dictionary*. Trim fails to provide any evidence that Congress intended an "idiosyncratic definition," *see Wis. Cent. Ltd.*, 138 S. Ct. at 2073, and we presume Congress intended to legislate the primary meaning

of voice, *see Holliday*, 498 U.S. at 57, which requires an audible component.

The context of the statute bolsters that Congress did not understand the meaning of voice to include a metaphorical component such as medium of expression, *see Brown & Williamson*, 529 U.S. at 133, because the remainder of 47 U.S.C. § 227 confirms that Congress used "voice" in the standard way. The TCPA defines "caller identification information" as "information regarding the origination of[] a call made using a voice service or a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A)). If voice calls encompassed text messages, the inclusion of the term text message would be surplusage, and Congress would have written the statute in a manner contrary to a basic canon of statutory construction, that a statute should be interpreted "so as not to render one part inoperative." *Pueblo*, 472 U.S. at 249.

This canon is misunderstood by Trim, because she alleges that, under the most natural reading of the word voice, the "artificial or prerecorded voice" component of the statute would be superfluous as applied to texts. Trim's appeal to the superfluity canon is unavailing, because, at a minimum, "artificial or prerecorded" applies to voice calls. *See Hill v. Kemp*, 478 F.3d 1236, 1247 (10th Cir. 2007) ("Congress is presumed to have added these words for *some* purpose.") (emphasis added).[4] Likewise, Trim's argument that interpreting voice as involving an audible component

---

[4] In any event, as Reward Zone points out, Trim is wrong that defining voice to require an audible sound would make the words "artificial or prerecorded" inoperable as to text messages because a "text" call could come via MMS (Multimedia Messaging Service), which could include audio sound with an artificial or prerecorded voice.

would make the term "artificial" surplusage, fails because an artificial voice is a sound resembling a human voice that is originated by artificial intelligence. *See, e.g.*, MIT TECHNOLOGY REVIEW, Karen Hao, *AI voice actors sound more human than ever—and they're ready to hire*, (July 9, 2021). Because Trim's arguments regarding the statutory context fail to overcome plain meaning, our "sole function" is to enforce the statute according to its clear terms, under which no text message sent by Reward Zone to Trim used a prerecorded voice in violation of 47 U.S.C. § 227(b)(1)(A). *See Lamie*, 540 U.S. at 534.

C

We are unpersuaded by Trim's remaining arguments, which we need not even consider on the merits. The statute is not ambiguous after exhausting "traditional tools of statutory construction." *United Food*, 484 U.S. at 123. For example, Trim argues that the legislative history of the TCPA demonstrates that the artificial/prerecorded voice prohibitions hinge on the fact that the calls are agentless, i.e., the lack of having a conversation with someone on the other side who can respond to questions or frustration, and instead receiving a static, one-sided message, and maintains that because the TCPA is a remedial statute, it should be construed broadly in her favor. However, these sorts of arguments are only on the menu after finding ambiguity based on the "language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341.

Trim also argues that binding FCC rules preclude a definition of voice that requires an audible component, because the Ninth Circuit has deferred to the FCC's interpretation that a text message is a call under the TCPA.

According to Trim, because the FCC has determined that a text message is a call, it must have a voice. However, if the statute "is unambiguous, we do not defer to the agency's interpretation." *Larson v. Saul*, 967 F.3d 914, 922 (9th Cir. 2020); *see also Chevron, U.S.A., Inc v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). Indeed, in the opinion Trim cites, we deferred to FCC reports and orders only after finding ambiguity in the undefined term "call." *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009). Trim's argument also fails for another reason: while we have deferred to the FCC's reasonable interpretation that a text is a call under the TCPA, we have nevertheless distinguished between "text calls" and "voice calls," *id*. at 953, thereby undermining Trim's position that "text calls" can use a "prerecorded voice." Likewise, the FCC has distinguished between "voice calls" and "text calls," *see In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003), and "voice calls" and "text messages," *see* 47 C.F.R. § 64.1200. Therefore, even if we deferred to the FCC because the term voice were ambiguous, that would undermine Trim's position rather than support it.

## III

Because ordinary meaning and statutory context show the term "voice" in 47 U.S.C. § 227(b)(1)(A) clearly excludes a symbolic definition, Reward Zone's text messages to Trim could not have violated the prohibition on "prerecorded voices" in that section, and we affirm the district court's grant of Reward Zone's motion to dismiss in relation to Trim's second cause of action.

**AFFIRMED**.