# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-2916

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

WILLIAM WHITE,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08-CR-851—**Lynn S. Adelman,** *Judge.*

ARGUED JANUARY 12, 2010—DECIDED JUNE 28, 2010

Before POSNER, FLAUM, and WILLIAMS, *Circuit Judges.*

PER CURIAM. A superseding indictment alleged that William White was the founder and content provider of a website that posted personal information about a juror who served on the Matthew Hale jury, along with postings calling for the use of violence on enemies of white supremacy. In connection with these postings, White was charged with soliciting a crime of violence in violation of 18 U.S.C. § 373. The district court dis-

missed the indictment, holding that White's internet posting could not give rise to a violation under § 373 because it was protected by the First Amendment. Because we find that the indictment is legally sufficient to state an offense, we reverse the district court's dismissal.

## I. BACKGROUND

According to the government's indictment, William White created and maintained the website Overthrow.com. Overthrow.com was affiliated with the "American National Socialist Workers Party," an organization comprised of white supremacists who "fight for white working people" and were "disgusted with the general garbage" that the white supremacist movement had attracted. White used the website to popularize his views concerning "non-whites, Jews, homosexuals, and persons perceived by white supremacists as acting contrary to the interests of the white race." On multiple occasions, White advocated that violence be perpetrated on the "enemies" of white supremacy and praised attacks on such enemies.

A repeated topic on his website was Matthew Hale, the leader of a white supremacist organization known as the World Church of the Creator. In January 2003, Hale was charged with soliciting the murder of a federal district court judge and obstruction of justice. Hale was convicted of two counts of obstruction of justice and one count of solicitation and sentenced to 480 months' imprisonment. Specifically related to the Matthew Hale trial, White wrote on his website in March 2005 that

"everyone associated with the Matt Hale trial has deserved assassination for a long time." He also wrote a posting naming individuals involved or related in some way to Hale's conviction, such as federal agents and prosecutors and other citizens advocating for Hale's arrest, stating that any of them may be the next targets of an "unknown nationalist assassin." White did not publish their personal information in that post because he felt "there is so great a potential for action."

On September 11, 2008, White posted personal information about the foreperson of the jury in the Hale trial ("Juror A"). At the time of the posting, Overthrow.com was an active website, and as such, each link and posting was contemporaneously accessible. So, a reader of this September 11 posting would have had access to the past posts about Hale, Hale's trial, and other calls for violence against "anti-racists." The September 11 entry by White was entitled "The Juror Who Convicted Matt Hale." It identified Juror A by name, featured a color photograph of Juror A and stated the following:

> Gay anti-racist [Juror A] was a juror who played a key role in convicting Matt Hale. Born [date], [he/she] lives at [address] with [his/her] gay black lover and [his/her] cat [name]. [His/Her] phone number is [phone number], cell phone [phone number], and [his/her] office is [phone number].

On the following day, White posted a follow-up entry entitled "[Juror A] Update—Since They Blocked the first photo." This posting contained all the same information as above, with the added sentence, "Note that [University A]

blocked much of [Juror A's] information after we linked to [his/her] photograph."

On October 21, 2008, a federal grand jury returned a one-count indictment charging White with soliciting a crime of violence against Juror A, in violation of 18 U.S.C. § 373. On February 10, 2009, the grand jury returned a superseding indictment, maintaining the single charge of solicitation and adding additional examples of the circumstances corroborating the defendant's intent to solicit a crime of violence against Juror A. The superseding indictment charged that:

> 2. From on or about September 11, 2008, through at least on or about October 11, 2008, in the Northern District of Illinois, Eastern Division, and elsewhere, WILLIAM WHITE, defendant herein, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of force against the person of Juror A, in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicited and otherwise endeavored to persuade such other person to engage in such conduct; in that defendant solicited and otherwise endeavored to persuade another person to injure Juror A on account of a verdict assented to by Juror A, in violation of Title 18, United States Code Section 1503.

> 3. It was part of the solicitation, inducement, and endeavor to persuade that on or about Septem-

ber 11, 2008, defendant WILLIAM WHITE caused to be displayed on the front page of "Overthrow.com" a posting entitled, "The Juror Who Convicted Matt Hale."

. . .

5. The above-described solicitation, inducement, and endeavor to persuade occurred under the following circumstances, among others, strongly corroborative of defendant WILLIAM WHITE's intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of force against the person of Juror A . . . .

White moved to dismiss the superseding indictment on the grounds that it violated the First Amendment, and on July 22, 2009, the district court granted White's motion to dismiss. The government timely appealed.

## II. ANALYSIS

### A. Indictment Valid on Its Face

The government argues on appeal that the superseding indictment is legally sufficient to charge the offense of solicitation. We review questions of law in a district court's ruling on a motion to dismiss an indictment de novo. *United States v. Greve*, 490 F.3d 566, 570 (7th Cir. 2007); *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988). An indictment is legally sufficient if it (1) states all the elements of the crime charged; (2) adequately

informs the defendant of the nature of the charges so that he may prepare a defense; and (3) allows the defendant to plead the judgment as a bar to any future prosecutions. *See* Fed. R. Crim. P. 7(c)(1); *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000). An indictment is reviewed on its face, regardless of the strength or weakness of the government's case. *Risk*, 843 F.2d at 1061. One that "tracks" the words of a statute to state the elements of the crime is generally acceptable, and while there must be enough factual particulars so the defendant is aware of the specific conduct at issue, the presence or absence of any particular fact is not dispositive. *Smith*, 230 F.3d at 305.

Applying these standards, the indictment here is legally sufficient. Title 18 of the United States Code, section 373(a) provides, in pertinent part:

> Whoever, with intent that another person engage in conduct constituting a felony that as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct.

In a solicitation prosecution, the government must establish (1) with strongly corroborative circumstances that a defendant intended for another person to commit a violent federal crime, and (2) that a defendant solicited or otherwise endeavored to persuade the other person to

carry out the crime. 18 U.S.C. § 373(a); *see United States v. Hale*, 448 F.3d 971 (7th Cir. 2006). A list of non-exhaustive corroborating circumstances of the defendant's intent include whether the defendant repeatedly solicited the commission of the offense, the defendant's belief as to whether the person solicited had previously committed similar offenses, and whether the defendant acquired the tools or information suited for use by the person solicited. *United States v. Gabriel*, 810 F.2d 627, 635 (7th Cir. 1987) (citing S. REP. NO. 97-307, at 183 (1982)).

The indictment here tracks the language of the statute, and lists each element of the crime. It charges White with having the intent for another person to injure Juror A, and soliciting another person to do so. It provides corroborating circumstances of White's intent. As one example of his intent, the government points to the re-posting of the information once action was taken by Juror A's employer to remove his picture from public access. As another, the government argues that White knew the persons solicited were prone to violence. The indictment properly charges a federal solicitation because injuring a juror for rendering a verdict is a federal offense under 18 U.S.C. § 1503. Finally, by adding factual allegations and dates, it makes White aware of the specific conduct against which he will have to defend himself at trial. In judging the sufficiency of this indictment, we do not consider whether any of the charges have been established by evidence or whether the government can ultimately prove its case. *United States v. Sampson*, 371 U.S. 75, 78-79 (1962); *Smith*, 230 F.3d at 305. We only look to see if an offense is sufficiently

charged, and on its face, this indictment adequately performs that function.

## B. No First Amendment Violation

Having found that the face of the indictment is legally sufficient to charge White with solicitation, our inquiry would ordinarily end. But the district court held that the indictment's allegations could not support a prosecution under 18 U.S.C. § 373 because White's internet posting was speech protected by the First Amendment. As detailed below, this potential First Amendment concern is addressed by the requirement of proof beyond a reasonable doubt at trial, not by a dismissal at the indictment stage.

The First Amendment removes from the government any power "to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002) (quotation marks omitted). Even speech that a "vast majority of its citizens believe to be false and fraught with evil consequence[s]" cannot be punished. *Whitney v. California*, 274 U.S. 357, 374 (1927). This broad protection ensures that the right of the Nazi party to march in front of a town hall is protected, *Collin v. Smith*, 578 F.2d 1197, 1202 (7th Cir. 1978), as is the right of an individual to express an unpopular view against the government, *Texas v. Johnson*, 491 U.S. 397, 419-20 (1989) (holding that the First Amendment protects the expressive act of flag burning). In *Brandenburg v. Ohio*, the Supreme Court invalidated a state statute targeting people who "advocate or teach the duty, neces-

sity, or propriety" of violence as a means of accomplishing reform, and held that even certain statements advocating violence had social value and received First Amendment protection. 395 U.S. 444, 448 (1969). At issue were Ku Klux Klan members' statements such as, "we're not a revengent organization, but if our President . . . continues to suppress the white, Caucasian race, it's possible that there might have to be some revengeance taken." *Id.* at 446. The Supreme Court held that "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force . . . except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id.* at 447. Speech related to the expression and advocacy of unpopular, and even violent ideas, receives *Brandenburg* protection.

Although First Amendment speech protections are far-reaching, there are limits. Speech integral to criminal conduct, such as fighting words, threats, and solicitations, remain categorically outside its protection. *United States v. Williams*, 553 U.S. 285, 297 (2008) ("Offers to engage in illegal transactions are categorically excluded from First Amendment protection."). This type of speech "brigaded with action" becomes an overt act or conduct that can be regulated. *Brandenburg*, 395 U.S. at 456 (Black, J., concurring). For this reason, a state cannot forbid individuals from burning crosses to express an opinion, but it can forbid individuals from burning crosses with the intent to intimidate others. *See Virginia v. Black*, 538 U.S. 343, 365-66 (2003). In the case of a criminal solicitation, the speech—asking another to commit a crime—is the

punishable act. Solicitation is an inchoate crime; the crime is complete once the words are spoken with the requisite intent, and no further actions from either the solicitor or the solicitee are necessary. *See* Wayne R. LaFave, *2 Substantive Criminal Law* § 11.1 (2d ed. 2009). Also, a specific person-to-person request is not required. *United States v. Rahman*, 189 F.3d 88, 117-18 (2d Cir. 1999).

For example, in *United States v. Sattar*, a district court, without requiring any evidence or allegations of further acts, found sufficient an indictment where the alleged solicitation consisted of a generally issued fatwa urging Muslims to "fight the Jews and to kill them wherever they are." 272 F. Supp. 2d 348, 373-74 (S.D.N.Y. 2003). In *United States v. Rahman*, Rahman was convicted of soliciting violence based on his public speeches calling for an attack on military installations and the murder of an Egyptian president. 189 F.3d at 117. Furthermore, that a request for criminal action is coded or implicit does not change its characterization as a solicitation. In *United States v. Hale*, this court held sufficient evidence existed to uphold a solicitation conviction where Hale never explicitly asked his chief enforcer to do anything. He simply asked his chief enforcer to locate a judge's home address and made statements such as "that information's been pro-, provided. If you wish to, ah, do anything yourself, you can, you know?" 448 F.3d 971, 979 (7th Cir. 2006). Hale's multiple attempts to distance himself from any illegal actions with statements such as "I'm gonna fight within the law" and "I can't take any steps to further anything illegal," were not enough to overturn the solicitation conviction. *Id.* We held that a

rational jury could have inferred his true intention from the evidence, regardless of any coded or disguised language. *Id.* at 984-85.

So, whether or not the First Amendment protects White's right to post personal information about Juror A first turns on his intent in posting that information. If White's intent in posting Juror A's personal information was to request that one of his readers harm Juror A, then the crime of solicitation would be complete. No act needed to follow, and no harm needed to befall Juror A. If, on the other hand, White's intent was to make a political point about sexual orientation or to facilitate opportunities for other people to make such views known to Juror A, then he would not be guilty of solicitation because he did not have the requisite intent required for the crime.

White argues that *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), stands for the proposition that the only permissible view of his posting is to see it as a constitutionally protected expression and subject to the *Brandenburg* test. In *Claiborne*, black citizens of Claiborne County, Mississippi, sent a letter to white merchants with a list of particularized demands for racial equality and integration. After receiving an unsatisfactory response, they began a boycott that lasted years. Several of the white merchants sued members of the boycott to recover losses and enjoin further boycott activity, and won. The Mississippi Supreme Court upheld liability as to 92 participants by finding that members had agreed to use force, violence and threats to ensure compliance with the boycott, but the Supreme Court reversed, holding

that an individual could not be held liable for his mere association with an organization whose members engage in illegal acts. *Id.* at 920. *Claiborne* primarily focused on the constitutionality of group-based liability, but it also concluded that Charles Evers, the field secretary of the NAACP and chief proponent of the boycott at the time, could not be held liable based on his "emotionally charged rhetoric." *Id.* at 928. In speeches given before and during the boycott, Evers stated that there would be "discipline" coming to those who did not participate in the boycott, and that any "uncle toms" would "have their necks broken." *Id.* at 900 n.28.

White reads too much into *Claiborne.* A careful reading of the Court's analysis of Evers's liability does not provide the support White believes it does. Given that the speeches were mainly an "impassioned plea" for unity, support, and nonviolent participation in the boycott, and the few choice phrases were the only example of threatening language, the Court found there was no evidence that Evers authorized violence or threatened anyone. In this context, the speeches did not exceed the bounds of *Brandenburg*-protected advocacy and could not be the basis of liability. But, the Supreme Court acknowledged that there would be no constitutional problem with imposing liability for losses caused by violence and threats of violence, *id.* at 916, and that if there was evidence of such "wrongful conduct" the speeches could be used to corroborate that evidence, *id.* at 929.

White's argument boils down to this: his posting was not a solicitation and because it is not a solicitation, it

is speech deserving of First Amendment protection. The government sees the posting in the opposite light: the posting and website constitute a solicitation and as such, fall outside the parameters of First Amendment protection. This dispute turns out not to be an argument about the validity of the indictment in light of the First Amendment, but is instead a dispute over the meaning and inferences that can be drawn from the facts. The government informed us at oral argument that it has further evidence of the website's readership, audience, and the relationship between White and his followers which will show the posting was a specific request to White's followers, who understood that request and were capable and willing to act on it. This evidence is not laid out in the indictment and does not need to be. *Sampson*, 371 U.S. at 78-79; *Smith*, 230 F.3d at 306. The existence of strongly corroborating circumstances evincing White's intent is a jury question. *Hale*, 448 F.3d at 983. Of course, the First Amendment may still have a role to play at trial. Based on the full factual record, the court may decide to instruct the jury on the distinction between solicitation and advocacy, and the legal requirements imposed by the First Amendment. *See, e.g., United States v. Freeman*, 761 F.2d 549, 552 (9th Cir. 1985). The government has the burden to prove, beyond a reasonable doubt, that White intended, through his posting of Juror A's personal information, to request someone else to harm Juror A. After the prosecution presents its case, the court may decide that a reasonable juror could not conclude that White's intent was for harm to befall Juror A, and not merely electronic or

verbal harassment. But, this is not a question to be decided now. We have no idea what evidence or testimony will be produced at trial. The government has laid out the elements of the crime and the statute that White is accused of violating, along with some specific factual allegations for support, and that is all it is required to do. The question of White's intent and the inferences that can be drawn from the facts are for a jury to decide, as the indictment is adequate to charge the crime of solicitation. The indictment is legally sufficient and should not have been dismissed.

## III. CONCLUSION

We REVERSE and REMAND for further proceedings consistent with this opinion.