**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 23, 2020[*]
Decided October 26, 2020

*By the Court:*

No. 20-1619

| | |
|---|---|
| WILLIAM A. WHITE, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | 19-cv-00418-JPG |
| WILLIAM TRUE and UNITED STATES OF AMERICA, *Defendants-Appellees.* | J. Phil Gilbert, *Judge.* |

## O R D E R

William White, a federal inmate, is in prison for criminal solicitation and threatening his wife by mail. He also threatened violence "around" his daughter, so the Bureau of Prisons barred him from mailing letters to her. White contested that decision as arbitrary and therefore invalid under the Administrative Procedure Act, 5 U.S.C. § 705(2)(a), and the First and Fifth Amendments, but the district court dismissed the suit. Because the prohibition on sending mail to his daughter is lawful, we affirm.

White has put his criminal history at issue in this case, so we review it briefly. First, he was convicted of criminal solicitation. *See United States v. White*, 610 F.3d 956 (7th Cir. 2010) ("White I"); *United States v. White*, 698 F.3d 1005 (7th Cir. 2012) ("White II"). White maintained a website where he "advocated that violence be perpetrated on

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

the 'enemies' of white supremacy and praised attacks on such enemies." *White I*, 610 F.3d at 957. On this site, White "applauded" the murders of the husband and mother of Judge Joan Lefkow. *White II*, 698 F.3d at 1009. After Matthew Hale was convicted for soliciting the murder of Judge Lefkow, *United States v. Hale*, 448 F.3d 971, 983 (7th Cir. 2006), White wrote that everyone involved in the trial "deserved assassination," *White II*, 698 F.3d at 1008, and posted the address and phone numbers of the foreperson of the jury that convicted Hale. *Id* at 1009–10. White was later convicted of criminal solicitation. *White II*, 698 F.3d at 1008.

Four years later, White was convicted again, this time for mailing threats to do "something violent" to his wife "around" his daughter if his wife denied him "access to [his] daughter." *See* 18 U.S.C. § 875(b); *United States v. White*, 810 F.3d 212, 215–16 (4th Cir. 2016) ("White III"). He sent four threats by mail, three of which mention his daughter:

> I've had an offer from a loan shark in Roanoke to split the money you owe me 50/50. He will send someone to beat your ass if you don't pay, and I will give him half for that service. I would rather we found some way to peacefully work things out so I had continuing contact with my daughter and you faced up to your obligations to me. If I don't hear from you soon, I will just let the guy know you owe me $500 and let him take care of it. If you won't face up to what you've done, someone has to hold you accountable.

> If I were to allow myself to be arrested, you have proven that you will take [our daughter] from me forever and that the federal government will assist you with this. So, rather than be arrested, I will remain free, and if you attempt you are going to have the living shit beat out of you—to start with. You don't seem to have any sense of right or wrong and only seem to respond to the threat of legal or physical force. The things you do upset a lot of people, and I have a lot of friends who think nothing of taking out on you the things you have done to me.

> I would very much like to avoid an incident in which something violent potentially happens to you around the baby. Will you make some agreement to settle the issues with the money and with my access to my daughter? If I don't hear from you within 24 hours, then what

> follows will be on you—I've done everything I can to work this out peacefully.

*White III*, 810 F.3d at 216–18.

Because White had used mail to threaten violence around his daughter, the Bureau barred him from sending mail to her. (She, however, may contact him.) It relied on its published policy that allows a warden to "reject correspondence sent by or to an inmate if it is determined detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity." BOP Program Statement 5265.14, 28 C.F.R. § 540.14(d). We previously affirmed the Bureau's use of this policy to stop White from receiving white supremacist materials that "advocated violence and murder." *See White v. Sloop*, 772 F. App'x 334 (7th Cir. 2019).

White responded with this suit. Invoking the APA and the First and Fifth Amendments, he accuses the government of "stifling" his "free speech" for "political" and "religious" reasons and retaliating against him for not naming white supremacists. The district court dismissed sua sponte the constitutional claims as unrecognized under *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The United States and the warden then successfully moved to dismiss the APA claim by arguing that the Bureau's decision was not reviewable under the APA and, even if it was, it was not arbitrary. (State-law claims that were dismissed are not at issue on appeal.)

We first turn to White's challenge under the APA. We will assume that a federal court may review under the APA White's claim that the Bureau arbitrarily applied its policy about mail to him. *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971). Based on White's history, the Bureau's decision was reasonable. The policy allows the warden to "reject correspondence sent by" an inmate if it would endanger the public. The Bureau knew that White had threatened violence "around" his daughter when he wrote ominously about "an incident in which something violent potentially happens to you around the baby." *White III*, 810 F.3d at 217–18. So the Bureau reasonably could stop White from mailing letters to his daughter. We recognize that White believes that the Bureau banned the mailings to retaliate for his refusal to identify white supremacists. But even if that motive were improper, the ban is still permissible. For one "bad motive" does not "spoil" a decision "that is adequately supported by good reasons," *Hammer v. Ashcroft*, 570 F.3d 798, 803 (7th Cir. 2009) (en banc), as is the case here because the motive to protect the daughter is legitimate and supported by White's criminal conduct.

We next consider de novo White's challenges to the district court's dismissal of the First Amendment claim. *Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1039 (7th Cir. 2012). First Amendment claims are not generally recognized in *Bivens* suits. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017), holds that federal judges should be reluctant to expand *Bivens* to new constitutional theories, and the Supreme Court has "never held that *Bivens* extends to First Amendment claims." *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012). White responds by citing *Smadi v. True*, 783 F. App'x 633 (7th Cir. 2019), where we asked for briefing on whether a court might recognize a First Amendment claim for damages under *Bivens*. But no briefing is required here. For even if *Bivens* allowed White to bring a First Amendment claim, as we have explained, the restriction on outgoing mail to his daughter serves a legitimate penological interest. *See Turner v. Safley*, 482 U.S. 78, 91 (1987). So White could not prevail on a First Amendment claim.

Finally, the district court also correctly dismissed White's Fifth Amendment claim. White observes that *Bivens* allows for some Fifth Amendment claims. *See Davis v. Passman*, 442 U.S. 228 (1979) (sex discrimination). Even so, he cannot state a claim for a violation of the substantive component of the Fifth Amendment's due process clause. First, where a statute like the APA provides a mechanism for seeking relief, a plaintiff cannot invoke *Bivens. See Hammer*, 570 F.3d at 800. Second, the Supreme Court has not held that due process guarantees prisoners a right to unregulated contact with their children. *See Overton v. Bazzetta*, 539 U.S. 126, 131–32 (2003). Even if some contact with his daughter is protected, White retains that right because she may initiate contact with him. Finally, the ban on outgoing mail to his daughter was reasonable based on his history of mailing threats to his family. Thus, the ban could not violate his right to due process. *See Platt v. Brown*, 872 F.3d 848, 852 (7th Cir. 2017) ("Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational.") (citations omitted).

                                                                                        AFFIRMED