**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

JOHN ARTHUR WALTHALL,

*Defendant-Appellant*.

No. 22-50204

D.C. No.
8:14-cr-00192-
CJC-1

OPINION

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted September 11, 2024
Pasadena, California

Filed March 11, 2025

Before: Ryan D. Nelson, Eric D. Miller, and Roopali H.
Desai, Circuit Judges.

Opinion by Judge Miller

# SUMMARY[*]

## Criminal Law

The panel affirmed John Walthall's conviction for solicitation to commit a crime of violence, in violation of 18 U.S.C. § 373(a).

While awaiting sentencing after having been found guilty of fraud, Walthall asked a fellow inmate to help arrange for hit men to murder the judge, the investigators, and the attorneys involved in his fraud case.

Walthall argued that the evidence was insufficient to support his conviction because he had no direct contact with the hit men, who apparently did not exist. The panel held that § 373(a) does not require that solicitation be carried out by a direct communication, rather than through an intermediary, and does not require that the person solicited actually exist. Although the statute does require circumstances strongly corroborative of the defendant's intent for someone to commit violence, the evidence here was sufficient to allow the jury to find such corroboration.

Without resolving a debate as to the applicable standard of review, the panel concluded that even under de novo review, Walthall's challenges to three jury instructions fail.

The panel rejected Walthall's contention that the district court erred in finding him incapable of representing himself at trial.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Daniel E. Zipp (argued), Special Attorney for the United States; Carling Donovan and Fred Sheppard, Assistant United States Attorneys; Office of the United States Attorney; Merrick B. Garland, United States Attorney General; United States Department of Justice, San Diego, California; for Plaintiff-Appellee.

Benjamin L. Coleman (argued), Benjamin L. Coleman Law PC, San Deigo, California; William M. Pope, Goddard Pope PLLC, Boise, Idaho; for Defendant-Appellant.

**OPINION**

MILLER, Circuit Judge:

While awaiting sentencing after having been found guilty of fraud, John Walthall asked a fellow inmate to help arrange for hit men to murder the judge, the investigators, and the attorneys involved in his fraud case. The inmate contacted authorities, and Walthall was ultimately convicted of solicitation to commit a crime of violence, in violation of 18 U.S.C. § 373(a). He now appeals, arguing that the evidence was insufficient because he had no direct contact with the hit men, who apparently did not exist. But the statute does not require that solicitation be carried out by a direct communication, rather than through an intermediary, nor does it require that the person solicited actually exist. Although it does require circumstances strongly corroborative of the defendant's intent for someone to commit violence, the evidence here was sufficient to allow the jury to find such corroboration. Walthall's other

challenges to his conviction also lack merit—including his argument that the district court erred in finding him incapable of representing himself. We affirm.

I

In 2009, a grand jury in the Central District of California returned an indictment charging Walthall with multiple counts of wire fraud based on his scheme to defraud an elderly couple out of $5.5 million. While on pre-trial release, Walthall absconded. He was eventually reapprehended, and after a jury trial, he was convicted and sentenced to 168 months of imprisonment. We affirmed his conviction and sentence. *United States v. Walthall*, 580 F. App'x 611 (9th Cir. 2014). Pointing to his flight, his use of a false identity, and his collection of weapons, we described him as "not only . . . a confirmed criminal, but a dangerous one." *Id.* at 613.

Before Walthall was sentenced, he told another inmate that he wanted "to get rid of the people involved in" his prosecution, including "the judge, the prosecutors, and the FBI agents," and he asked the inmate if he knew anyone in a prison gang who would be willing to commit murder for hire. The inmate reported the conversation, and after Walthall was sentenced and transferred to federal prison, the FBI arranged for a different inmate to act as an informant and meet Walthall while wearing a recording device.

During that meeting, the informant offered "John," purportedly his brother-in-law, as a "messenger" who could pass along Walthall's wishes to a hired killer or killers. Walthall agreed that he wanted John to "hire somebody that can be at a distance . . . so it's deniable." He advised the informant on the "easiest way" to find the judge from his fraud case and explained that he wanted the murder to be "nice and painful," with the judge's arms and legs "cinched"

and his body "shoved in a . . . wood chipper." He also explained that he wanted John to find an FBI agent involved in his case, "and his wife, and family," and to "make their bodies disappear." He said he would pay for the killings after they were committed.

A few weeks later, an undercover FBI agent, posing as John, met with Walthall. During that meeting, Walthall identified his "top priorities" among the potential victims and asked that John "supervise their admissions [and] confessions" about how they had "rigged" his case. Walthall provided the full names of the judge, prosecutors, defense attorney, and FBI agents, and he instructed John not to search for them on a computer that could be traced to him. He again specified that he wanted John to "oversee the operation" but not commit the murders personally. He explained that he had a team of hit men coming from Colombia and that John would be "telling them what to do." In exchange for John's services, Walthall offered to pay him "something like a million bucks a year of income."

Walthall was indicted on one count of solicitation to commit a crime of violence, in violation of 18 U.S.C. § 373(a). At a pretrial hearing, Walthall complained of a conflict with his appointed attorney and asked to represent himself. He also submitted a 1,664-page document outlining 872 reasons for the district judge to recuse himself and complaining that, while Walthall was in prison, "DOJ/FBI/BOP-employee directed, and controlled Entrapment Officers" had employed "Gangsters, Serial-Murderers, and Professional Terrorists, from Mexico, Colombia, and Nigeria" to extort money from him.

The district court held a hearing to determine whether Walthall had the capacity to stand trial and to represent

himself. *See Faretta v. California*, 422 U.S. 806 (1975). At the hearing, Walthall asserted, "I am not a madman," adding that he had "never had independent, unconflicted counsel" because defense counsel, the prosecutors, the FBI, and the previous judge had all participated in "this engineered false case where I am falsely convicted and imprisoned." Two Bureau of Prisons psychologists testified that Walthall did not suffer from a mental illness that would deprive him of the ability to understand the nature of the proceedings against him. But when asked whether Walthall would be able "to carry out the basic tasks needed to present his own defense," one testified that although "he could if he chose to do so, . . . he's unlikely to do so," while the other testified that Walthall was not capable of representing himself because "he is still so interested in his own agenda." The district court found that Walthall was "competent to understand the nature and consequences of the proceedings against him" but was "not capable of organizing a relevant legal defense to these very serious charges" because he was "adamant" about discussing what the court described as "a delusional widespread conspiracy." It therefore denied his request to represent himself.

The case proceeded to trial, but the jury was unable to reach a verdict. Walthall was retried, and the jury found him guilty. Walthall then appealed, and we reversed and remanded for a new trial. *United States v. Walthall*, 782 F. App'x 578 (9th Cir. 2019). We held that the district court erred by denying Walthall the right to represent himself "largely based on [his] antics during court appearances," and by "not making further inquiry to support findings concerning [his] ability to represent himself." *Id.* at 579–80.

On remand, the district court ordered an evaluation of both Walthall's competency to stand trial and his

competency to represent himself. Walthall refused to meet with Bureau of Prisons psychologists, so they based their evaluation on a review of his medical records and phone calls. They noted that "at every opportunity, he verbalized his own agenda," resulting in his "speaking out of turn, and being removed from court." But they eventually determined that Walthall was competent to "assist counsel in his defense or represent himself with standby counsel."

At a hearing, the district court asked Walthall if he could accept limitations on his ability to talk about his prior fraud case, and Walthall began a lengthy speech, repeating many of the same conspiratorial claims he had articulated before. For his part, Walthall's attorney offered the view that Walthall "would not be competent to defend himself."

The district court concluded that Walthall was competent to stand trial because he was "able to understand the nature and consequences of the proceedings against him" and could "assist in preparing his defense." The court then considered whether Walthall was competent "to carry out the basic tasks needed to present his own defense without the help of counsel," and it concluded that he was not. *Indiana v. Edwards*, 554 U.S. 164, 175–76 (2008). The court determined that Walthall had "a severe mental illness" and that his "obsessiveness, compulsiveness, narcissism, paranoia, and delusions cause him to cling extremely tightly to his widespread conspiracy beliefs." Walthall's illness, the court found, would make him "unable to organize and present an effective defense" because it would "preclude him from focusing on this case . . . rather than the underlying fraud case or the related purported widespread conspiracy." It also would make it "impossible for [Walthall] to make motions or argue points of law that are not related to his

widespread conspiracy beliefs" or even to "control himself in Court."

The case proceeded to a third trial, in which Walthall was represented by counsel. The jury found Walthall guilty of soliciting the murder and the assault of each of five named victims: the judge, two FBI agents, and two Assistant United States Attorneys. The court imposed the statutory maximum sentence of 240 months of imprisonment.

## II

Walthall argues that the evidence was insufficient to allow the jury to find him guilty of soliciting a crime of violence because, he says, "nobody that Mr. Walthall spoke to was asked to murder the federal officials, nor was there any direct and known conduit to an actual person who would engage in the violent conduct." In his view, 18 U.S.C. § 373(a) requires (1) that the defendant have "direct" communication with the person whom he intends to commit an act of violence and (2) that the person with whom he communicates be a specific "actual person." We think the statute requires neither of those things.

Section 373(a) applies to anyone who:

> with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or

> otherwise endeavors to persuade such other person to engage in such conduct.

The operative verbs—that is, the words that define the prohibited conduct—are "solicits, commands, induces, or otherwise endeavors to persuade." In ordinary usage, none of those verbs requires direct communication. A CEO can "solicit" applications for employment—or "induce" job-seekers to apply—by instructing the human-resources director to advertise a position. A general can "command" an army by directing subordinate officers to relay orders to the troops. And a litigant can "endeavor[] to persuade" a court by hiring a lawyer to file briefs and present oral argument. Nothing in the statute "provide[s] 'contextual evidence that Congress intended to depart from the ordinary meaning'" of those terms by giving them a narrower meaning than they would ordinarily carry. *Rajaram v. Meta Platforms, Inc.*, 105 F.4th 1179, 1182 (9th Cir. 2024) (quoting *Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1161 (9th Cir. 2023)). Had Congress wished to require that the defendant communicate directly, it could easily have said so . . . directly. We will not add an adverb that Congress chose not to include in the statute. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024).

Our reading of section 373(a) is consistent with the decisions of other courts of appeals, which have held that the broad language of the statute applies to "all sorts of communication strategies," *United States v. Barefoot*, 754 F.3d 226, 238 (4th Cir. 2014), and can "cover *any* situation where a person seriously seeks to persuade another person to engage in criminal conduct," *United States v. Buckalew*, 859 F.2d 1052, 1054 (1st Cir. 1988). Indeed, the Seventh Circuit has explained that a "specific person-to-person request is not

required." *United States v. White*, 610 F.3d 956, 960 (7th Cir. 2010) (per curiam). And although we have not directly confronted the question, we held in *United States v. Stewart* that a defendant violated the statute when he asked an intermediary to have the intermediary's brother-in-law murder his victim. 420 F.3d 1007, 1021 (9th Cir. 2005). Walthall's interpretation cannot be reconciled with that decision.

Nor does the statute require a "known conduit to an actual person," as Walthall would have it. Section 373(a) requires that the defendant solicit, command, induce, or otherwise endeavor to persuade "with intent that another person engage in conduct" that constitutes a violent felony. What matters is the defendant's "intent that another person" commit an act of violence, not that the other person actually be prepared to do so or even that the other person exist.

Here again, Walthall's position is contrary to precedent. In *Stewart*, where the defendant communicated with an intermediary whose brother-in-law was to commit a murder, we noted repeatedly that the intermediary's brother-in-law was "fictional." 420 F.3d at 1021. It was enough that the defendant believed that the brother-in-law existed and had the "intent to have the murder committed by [the] fictional brother-in-law." *Id.* Those facts, we held, brought the defendant's "conduct squarely . . . within the range of conduct prohibited by the statute." *Id.*; *accord United States v. McNeill*, 887 F.2d 448, 451, 455 (3d Cir. 1989) (affirming section 373(a) conviction of defendant who wrote letters attempting to hire a fictional hitman). Similarly, in *White*, the defendant wrote on an extremist website that "everyone associated" with a particular trial "deserved assassination," and he later posted the name and address of the jury foreperson. 610 F.3d at 957. The Seventh Circuit held that

the indictment adequately charged a violation of section 373(a) even though the solicitation was made to all the readers of the website, and there was no evidence that the defendant intended any specific person to act on it. *Id.* at 959.

Walthall relies on *Flores-Figueroa v. United States*, in which the Supreme Court held that a defendant can violate the statutory prohibition on aggravated identity theft only by appropriating the identity of a real person. 556 U.S. 646 (2009). But that case involved a differently phrased statute, which required that a defendant "knowingly . . . use[] . . . a means of identification of another person." 18 U.S.C. § 1028A(a)(1). The Court held that the word "knowingly" applies to "another person," so the statute "require[s] a prosecutor to show that the defendant *knows* that the means of identification the defendant has unlawfully used in fact belongs to another person." 556 U.S. at 650. As we have already explained, however, section 373(a) is different. It does not require that a defendant know anything about another person. Instead, it requires only that the defendant have the "intent that another person engage in" a violent felony. A defendant can have such an intent even if the fulfillment of his intent is impossible—including because the other person does not actually exist.

With that understanding of section 373(a), we have little difficulty concluding that the evidence in this case was sufficient for conviction. We review the sufficiency of the evidence de novo. *United States v. Kaplan*, 836 F.3d 1199, 1211 (9th Cir. 2016). In so doing, we "construe the evidence 'in the light most favorable to the prosecution,'" asking "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010)

(en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Walthall told an informant that he wanted John to "hire somebody" to murder his targets. He also told the undercover FBI agent who posed as John that he had a hit squad of men who would come from Colombia and that John would be "telling them what to do." From those facts, a rational juror could easily have determined that Walthall sought to use John as an intermediary in an endeavor to persuade third parties to commit the murders—either the Colombian hit squad or the unidentified "somebody" who was to be hired by John.

To be sure, the statute also requires that the defendant act "under circumstances strongly corroborative of . . . intent." 18 U.S.C. § 373(a). We have held that this clause requires the government to "present evidence of facts accompanying the solicitation strongly confirming that the defendant actually intended the solicited person to engage in the solicited violent crime." *Stewart*, 420 F.3d at 1020. Our decision in *Stewart* illustrates the kind of evidence that can satisfy that requirement. There, we relied on "the circumstances accompanying the solicitation (*e.g.*, the multiple discussions between [the defendant] and [an informant], the offer of payment, . . . and the method of execution)." *Id.* at 1021. Here too, Walthall engaged in multiple discussions, first with the informant and then with John, and in those discussions he offered payment, described his preferred method of committing the murders, and gave detailed information about the proposed victims, including their full names, the correct spelling of their names, and how to locate them. From those facts, a rational juror could have inferred that Walthall seriously intended to have someone murder the named targets.

Walthall emphasizes that his conversations with the informant and the undercover agent included some rambling and nonsensical digressions and that the Colombian hit squad was apparently a product of Walthall's imagination. Admittedly, it may seem improbable that Walthall was indeed in a position to hire a team of Colombian contract killers. And as a general matter, the more far-fetched a defendant's scheme, the more likely one might be to conclude that it reflects not a genuine intent for violence but rather, as Walthall put it in his opening statement at trial, the "fantastical musings of a lonely man." But that is for the jury to decide. Here, the jury listened to recordings of the conversations and had the opportunity to assess Walthall's intent. It was free to draw reasonable inferences and to resolve the conflicting evidence about the seriousness of Walthall's intent in favor of the government. *See United States v. Yoshida*, 303 F.3d 1145, 1149–51 (9th Cir. 2002).

### III

Walthall advances three challenges to the jury instructions. The parties debate the standard of review that applies to those challenges, which Walthall did not advance below and arguably affirmatively waived. We need not resolve that debate because even if we were to review de novo, we would conclude that Walthall's challenges fail.

First, Walthall objects that although section 373(a) requires the defendant to intend that "another person" engage in a crime of violence and to solicit "such other person to engage in such conduct," the instructions did not refer to "such other person" but simply repeated the phrase "another person." As a result, he says, "the instructions eliminated the unity required between the solicited person and the intended violent conduct." But the instructions

required the jury to find that Walthall "solicited, commanded, induced, or otherwise endeavored to persuade another person to carry out a federal felony crime of violence"—in other words, that he solicited the person whom he intended to carry out the crime of violence. That is precisely the offense that the statute describes. Even if some other instruction might have been clearer, "[t]he availability of a better instruction is not a ground for reversal." *United States v. Garza*, 980 F.2d 546, 554 (9th Cir. 1992) (quoting *United States v. Ward*, 914 F.2d 1340, 1344 (9th Cir. 1990)).

Second, Walthall objects that the instructions did not specify that "another person" must be an actual person. As we have already explained, however, that is not an element of the statute.

Third, Walthall contends that the district court erred in instructing the jury that "killing or attempting to kill any officer or employee of the United States . . . is a federal felony crime of violence." In his view, the reference to attempt was confusing because the district court did not define attempt. The government acknowledges that given the nature of the charged conduct—that is, solicitation of actual murder, not attempted murder—it would have been better for the instructions not to refer to attempt. Assuming without deciding that the reference to attempt was legally erroneous, the error was harmless. *See United States v. Bachmeier*, 8 F.4th 1059, 1065 (9th Cir. 2021). Other parts of the instructions stated that "the United States alleges that the federal felony crimes of violence solicited were" murder and assault, without mentioning attempt. No evidence suggested that Walthall solicited attempted murder, and the prosecutor did not mention attempted murder in the opening statement or the closing arguments. And on the verdict form, the jury specifically found Walthall guilty of "soliciting the murder

of" the five named victims, not of soliciting attempted murder. The reference to attempt therefore had no effect on the verdict.

## IV

Next, Walthall challenges the district court's denial of his right to represent himself. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Although the amendment expressly guarantees only a right to counsel, the Supreme Court has held that it "implies a right of self-representation." *Faretta*, 422 U.S. at 821. In other words, a defendant "has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so." *Id.* at 807. But that right is not absolute. For example, it may be terminated when a defendant "deliberately engages in serious and obstructionist misconduct." *Id.* at 834 n.46. And, as relevant here, it may also be limited when a defendant lacks the capacity to represent himself.

A defendant "whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial," whether or not he is represented by counsel. *Drope v. Missouri*, 420 U.S. 162, 171 (1975); *see also Dusky v. United States*, 362 U.S. 402 (1960) (per curiam). But in *Indiana v. Edwards*, the Supreme Court held that some defendants who are competent to stand trial if represented may "suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." 554 U.S. at 178. In such cases, a court may "limit that defendant's self-representation right by insisting

upon representation by counsel at trial—on the ground that the defendant lacks the mental capacity to conduct his trial defense unless represented." *Id.* at 174. As we have previously observed, the Supreme Court has "specified no single standard for such 'gray-area' cases because a trial judge 'will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant.'" *United States v. Read*, 918 F.3d 712, 721 (9th Cir. 2019) (quoting *Edwards*, 554 U.S. at 177).

Attempting to sidestep *Edwards*, Walthall argues that the district court violated our mandate from the prior appeal by preventing him from representing himself without first conducting a *Faretta* colloquy to determine whether he "knowingly and intelligently" waived his right to appointed counsel. *United States v. Farias*, 618 F.3d 1049, 1051–52 (9th Cir. 2010). Under the mandate rule, "a lower court [is required] to act on the mandate of an appellate court, without variance or examination, only execution." *United States v. Garcia-Beltran*, 443 F.3d 1126, 1130 (9th Cir. 2006). The district court did not violate that rule.

In the earlier appeal, we held that "once the district court determined that Walthall was competent to stand trial, the district court erred by not making further inquiry to support findings concerning Walthall's ability to represent himself." *Walthall*, 782 F. App'x at 580. We did not foreclose the district court from denying Walthall's self-representation request under *Edwards*; we simply required the district court to conduct "further inquiry" and make appropriate "findings concerning Walthall's ability to represent himself." *Id.* That is exactly what it did.

Walthall also asserts that *Edwards* does not apply in federal court because 28 U.S.C. § 1654 gives federal criminal defendants an absolute right to self-representation. It does not. Section 1654 provides: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654. That statute sets out the general principle that parties may represent themselves or be represented by counsel, but it does not limit the inherent authority of courts to impose reasonable rules on both forms of representation. Tellingly, Walthall identifies no post-*Faretta* case endorsing an absolute federal statutory right to self-representation, and numerous decisions of this court have implicitly rejected such a right. *See, e.g.*, *United States v. Telles*, 18 F.4th 290, 302 (9th Cir. 2021) (applying *Faretta* in rejecting a federal criminal defendant's claim of a right to self-representation); *United States v. Audette*, 923 F.3d 1227, 1237–38 (9th Cir. 2019) (applying *Edwards* in assessing whether a federal criminal defendant should have been permitted to represent himself); *United States v. Ferguson*, 560 F.3d 1060, 1068 (9th Cir. 2009) (same); *see also United States v. Berry*, 565 F.3d 385, 392 (7th Cir. 2009) (explaining that *Edwards* applies in federal court).

That leaves Walthall's claim that the district court erred in its application of *Edwards*. We review the decision to appoint counsel for abuse of discretion. *Read*, 918 F.3d at 722; *see also Edwards*, 554 U.S. at 177.

The district court issued a thorough, 34-page order in which it found that Walthall "suffers from a severe mental illness to the point where he cannot carry out the basic tasks needed to present his own defense without the help of counsel." Before reaching that conclusion, the district court

had presided over two competency hearings and two trials, and it relied on what it accurately described as its "extensive interaction" with Walthall, considering not only its own "five-plus years of experience observing and dealing with [Walthall]," but also testimony from Walthall's past and current attorneys, as well as the "diagnoses and opinions from four different doctors." The district court carefully reviewed several factors corresponding to those the Court in *Edwards* considered in evaluating whether Walthall could "carry out the basic tasks needed to present his own defense without the help of counsel," 554 U.S. at 175–76, including his ability to organize a defense, make motions and argue points of law, and address the court and question witnesses.

The district court also considered countervailing evidence—most notably, two BOP psychologists' opinions that Walthall was competent to represent himself. The court explained why it did not give greater weight to those opinions, including because the psychologists did not "tie their conclusion[s] to any facts or reasoning," did not have the opportunity to directly evaluate Walthall, and "are not trial lawyers," which "make[s] it difficult for them to understand all that is required to conduct a trial." The court's ultimate findings were amply supported by the record, and the court did not abuse its discretion.

V

Finally, Walthall asserts that the district court erred in calculating the applicable sentencing range under the advisory Sentencing Guidelines based on the maximum sentence for soliciting murder rather than for soliciting attempted murder. Because Walthall did not raise this issue at sentencing, we review for plain error. *United States v. Bautista*, 989 F.3d 698, 701 (9th Cir. 2021). We find none.

As we have already explained, the jury returned a verdict finding Walthall guilty of soliciting the murder, not the attempted murder, of five people. The district court did not err in calculating Walthall's sentence accordingly.

**AFFIRMED.**